<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-4940**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JAMES MORROW COLLINS, JR.,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the District of South Carolina, at Columbia. Cameron McGowan Currie, Senior District Judge. (3:09-cr-01295-CMC-2)

———————

Argued: October 30, 2013        Decided: January 3, 2014

———————

Before MOTZ, GREGORY, and DAVIS, Circuit Judges.

———————

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Motz and Judge Davis joined.

———————

**ARGUED**: Clarence Rauch Wise, Greenwood, South Carolina, for Appellant. Nathan S. Williams, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF**: William N. Nettles, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

In this criminal appeal, the defendant, James Morrow Collins, Jr., raises two challenges to the procedural reasonableness of his sentence. For the reasons stated below, we reject the defendant's arguments and affirm the sentence imposed by the district court.

## I.

On December 1, 2009, Collins and co-defendant Gene Jeffcoat were named in a five-count indictment charging them with the following: conspiracy to violate the Animal Welfare Act and to engage in an illegal gambling business in violation of 18 U.S.C. § 371 (Count One); participation in an unlawful animal fighting venture in violation of 7 U.S.C. § 2156 and 18 U.S.C. § 2 (Counts Two and Three); and operating an illegal gambling business in violation of 18 U.S.C. § 1955 and 18 U.S.C. § 2 (Counts Four and Five).[1] The indictment stemmed from an undercover investigation by South Carolina Department of Natural Resources (DNR) officers into a cockfighting organization in Swansea, South Carolina. SJA 10. As part of the investigation, several undercover officers attended and made video recordings

---

[1] Fellow participants Nancy Dyal, Sheri Hutto, and Wayne Hutto were indicted separately on similar charges.

of three cockfighting "derbies" held between June 2008 and April 2009. SJA 11. The events took place on property owned by Jeffcoat. SJA 10. During the derbies, participants paid a fee to enter birds into individual cockfighting matches. Id. The owner whose bird won the most matches during the derby collected the sum of the entrance fees, less a cut taken by Jeffcoat. Id. Spectators were required to pay an attendance fee at the door, as well as purchase a membership in the South Carolina Gamefowl Breeders Association. Id.

Collins and Jeffcoat, along with the separately named defendants, operated in numerous capacities at the derbies, including: working the door to collect entry fees, serving as referees, operating a computer to match the birds with opponents, maintaining a "fight board" on which win-loss results were posted, paying the winners and the referees, and generally enforcing the rules of the event. SJA 10-11. At the April 2009 derby, DNR Sergeant John Lewis, who was secretly recording the event, was discovered as an undercover officer. SJA 12. This ended the active investigation and led to the indictment. Id.

After a consolidated trial, all of the defendants were convicted of all counts. Following an appeal, Counts Two and Three were overturned by this Court. United States v. Lawson,

677 F.3d 629 (4th Cir. 2012).[2] The conspiracy conviction and the conviction for operating an illegal gambling business were affirmed, and the case was remanded for a new trial on the animal fighting statute charges. Id. at 656. In light of the remand, the court did not address several sentencing challenges raised by Collins. Id.

On remand, the Government dismissed the animal fighting charges. At his resentencing hearing for the remaining illegal gambling counts, Collins objected to the probation officer's determination that he was subject to a four-point enhancement under U.S.S.G. § 3B1.1(a) as an organizer or leader of the gambling operation. Collins also argued that he should be granted a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The district court rejected both of Collins' arguments and sentenced him to twenty-one months in prison. Collins now appeals both issues.

**II.**

---

[2] The decision to vacate the animal fighting convictions concerned an issue of juror misconduct. Lawson, 677 F.3d at 651. The conviction for Count One, which charged the defendants both with conspiracy to violate the Animal Welfare Act and with conspiracy to engage in an illegal gambling business, was upheld because the Court ruled that the illegal gambling business convictions in Counts Four and Five independently supported the conspiracy conviction. Id. at 655.

4

**A.**

In reviewing the application of the Sentencing Guidelines, the district court's factual findings are examined for clear error, and issues of law are reviewed de novo.  United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996).

**B.**

Collins first contends that the evidence at trial was insufficient to satisfy the criteria in U.S.S.G. § 3B1.1(a) necessary for him to be considered an organizer or leader.  The guidelines differentiate between an "organizer or leader" of a criminal activity, which accords a four-point enhancement, and a "manager or supervisor," which results in a three-point increase.  § 3B1.1(a)-(b).  The section's application notes advise that the following factors should be considered in determining whether a defendant is an organizer or leader:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4.

In United States v. Llamas, this Court explained that, "in assessing whether a defendant played an aggravating role in the offense of conviction, the key inquiry is whether the defendant's role was that of 'an organizer or leader of people,'

5

as opposed to that of a manager over the property, assets, or activities of a criminal organization." 599 F.3d 381, 390 (4th Cir. 2010) (quoting United States v. Cameron, 573 F.3d 179, 185 (4th Cir. 2009)).

Collins first argues that, during the time period covered by the indictment, his general involvement in the cockfighting organization was relatively limited.[3] He contends that he was present at no more than half of the derbies between January 2008 and April 2009. He also asserts that Jeffcoat was the sole leader of the organization, establishing such rules as the prohibition of alcohol, a ban on side betting, and refusing entry to out-of-state participants. Aside from a few referees who were paid for their time, Jeffcoat was the only member of the conspiracy who received any compensation from the operation.

We disagree with the defendant's arguments, finding that the evidence supports the district court's determination that Collins was a leader or organizer of the operation. The testimony at trial showed that Collins supervised fellow participants Sheri Hutto and Nancy Dyal, as well as several referees. A number of witnesses, including Clay Bradham, Brett Henderson, David Davis, and Mike Rodgers, provided strong

---

[3] The record reflects that Collins was more heavily involved in derbies at a different facility in years prior to the period covered in the indictment.

circumstantial evidence that Collins was a leader of the organization. Each stated that Collins was frequently in the office using the computer before and during matches, and that he was largely responsible for handling the money and paying out winning shares. Rodgers specifically stated that Jeffcoat and Collins were in charge of the operation at Swansea, noting that Collins corrected refereeing errors and was called on to resolve disputes that arose during matches. Rodgers also testified that Collins was responsible for finding referees to oversee the fights. Additionally, Sgt. Lewis testified that, based on his observations while undercover, Collins was involved in managing the fight board, keeping track of electronic records, and occasionally directed an individual named Mike Grooms to fight birds on his behalf.

Further, the district court properly relied on Collins' conduct after Sgt. Lewis was discovered to be a DNR agent. During the incident, Collins was the primary decision maker with respect to how the group would handle Lewis. The court noted that Collins immediately discussed the situation with Jeffcoat, and that Collins stated he was considering calling the police to have Lewis arrested for trespassing. Collins then escorted Lewis off the premises, at least in part to ensure that none of the other participants harmed him.

In sum, the evidence shows that Collins exhibited significant authority in running the operation and controlling derby participants and other members of the organization. He was responsible for making sure the events ran smoothly, and he exhibited influence over people when important decisions needed to be made. Therefore, in the absence of clear error, we affirm the district court's application of the four-point enhancement under § 3B1.1(a).

## c.

Collins' second argument is that the district court improperly failed to deduct two points for acceptance of responsibility under U.S.S.G. § 3E1.1. He contends that he is entitled to the reduction because his decision to go to trial was premised on a challenge to the legal conclusion that his actions amounted to gambling under South Carolina law, as opposed to the factual findings that led to his convictions.[4]

---

[4] In the initial appeal, the defendants reiterated their two main legal challenges to the gambling convictions: that the district court erred in failing to charge the jury that the defendants must have known that their conduct constituted gambling under South Carolina law; and that the court erred in instructing the jury that the relevant South Carolina gambling statute is violated when a person pays an entry fee to enter a contest of skill and the winnings depend on the number of entries. Lawson, 677 F.3d at 652. This Court rejected both arguments. Id. at 652-54.

As the district court noted, Collins was not automatically precluded from receiving an adjustment for acceptance of responsibility merely because he went to trial:

> Conviction by trial . . . does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt . . . .

U.S.S.G. § 3E1.1(a) cmt. n.2.

However, the evidence supports the district court's conclusion that at trial Collins sought to minimize his involvement in the derbies by contesting several factual bases for the convictions. For example, in argument and on cross-examination, Collins emphasized that Jeffcoat devised the rules for running the derbies, that Collins did not participate in or condone side betting, and that he was not paid for his time. By contesting his involvement in the derbies generally, Collins denied responsibility for the facts giving rise to the gambling convictions.

Collins' testimony at his sentencing hearing further sought to downplay his role in the derbies. He argued that he was absent from many of the derbies during the relevant time period, that he did not exercise authority when he was there, and,

again, that he did not receive any compensation for his involvement.

Thus, while it is certainly true that Collins' defense depended in part on legal arguments that his actions did not constitute gambling, he also consistently refused to acknowledge that he was an active member of the organization. Therefore, the district court did not clearly err in denying Collins credit for acceptance of responsibility. See United States v. Dugger, 485 F.3d 236, 239 (4th Cir. 2007) ("We must give great deference to the district court's decision because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. The sentencing judge is in the best position to evaluate the defendant's acts and statements to determine whether the defendant has accepted responsibility for his or her criminal conduct.") (internal quotation marks and citations omitted).

## III.

For the foregoing reasons, we affirm the sentence imposed by the district court.

AFFIRMED